EDMUND REDGATE v. WYATT ROUSH *et al.*

**No. 11,466.** (59 Pac. 1050.)

1. LIBEL—*Deposed Pastor—Notice by Elders in Church Papers.* Where the officers of a church, upon inquiry, find that their pastor is unworthy and unfit for his office, and thereupon, in the performance of what they honestly believe to be their duty toward other members and churches of the same denomination, publish, in good faith, in the church papers the result of their inquiry, and there is a reasonable occasion for such publication, it will be deemed to be privileged, and protected under the law.

2. ———— *Reading by Outsiders Immaterial.* Where the publication appears to have been made in good faith and for the members of the denomination alone, the fact that it incidentally may have been brought to the attention of others than members of the church will not take away its privileged character.

3. ———— *Malice Must be Shown.* In such case, and where the plaintiff seeks damages, it devolves on him to establish actual malice, and where his own testimony disproves malice, the court is justified in taking the case from the jury upon a demurrer to the evidence.

Error from Wabaunsee district court; WILLIAM THOMSON, judge. Opinion filed February 10, 1900. Affirmed.

STATEMENT.

ACTION by Edmund Redgate to recover damages from Wyatt Roush, W. H. Goodwin, E. Parmiter and C. L. Wilkinson for alleged libels written and published by them.

Redgate was a member of the Church of Christ, had preached in different churches of that denomination, and, for three years prior to 1897, had preached for the congregation at Wilmington, Kan., of which organization the defendants were elders. In 1897 his conduct and services were not satisfactory to that church, and at a meeting of the elders the fellowship of the church was withdrawn from the plaintiff, and

official notice of the action taken was sent to and published in *The Octographic Review*, of Indianapolis, Ind.; *The Christian Leader*, of Cincinnati, Ohio; *The Firm Foundation*, of Austin, Tex., and *The Primitive*, of Panama, Neb., sectarian papers published in the interest of the Church of Christ. The following is the notice which was so published:

"*To whom it may concern:*

WILMINGTON, KAN., June 5.—This is to certify that on the 9th day of May, 1897, fellowship was withdrawn from one E. Redgate, a member of the Church of Christ at this place and also a preacher. The charges against him were insubordination and separating himself from the congregation and trying to create a faction, and therefore we cannot commend him as worthy of the confidence of the brotherhood. He has tried to undermine the church here in various ways, and has shown himself utterly void of the spirit of Christ. There are other charges that could be preferred and sustained. Any other information that is wanted we will give when requested, and for any other reference we refer you to our sister congregation at Harveyville, three and one-half miles north. We further state, anything he may say or do to try to show that the Wilmington congregation is divided in his case is false, for there is not a member in the congregation, to the best of our knowledge, at the present time but what believes he has walked disorderly and to the detriment of the church. E. PARMITER.
WYATT ROUSH.
W. H. GOODWIN.
C. L. WILKINSON."

In his petition, the plaintiff alleged that the publication was maliciously made, with the intention of destroying his reputation as a preacher and taking away his only means of support.

The defendants answered by a general denial and the averment that the plaintiff was never at any time

a qualified and acting minister of the Gospel of that denomination.

Issue being joined and the trial had, the plaintiff introduced his testimony, after which the court sustained a demurrer to the evidence and gave judgment for the defendants.

*Isenhart & Alexander*, for plaintiff in error.

*Robert C. Heizer*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: One of the principal questions presented for decision is whether the communication complained of was privileged under the law. It was alleged that it was made in bad faith and with the malicious purpose of injuring the plaintiff. The publication is defamatory in character, and naturally would largely deprive the plaintiff of the confidence of the members of his church organization throughout the country. If it was false in fact and maliciously made, the plaintiff is entitled to recover to the extent of the injury suffered, unless the relations of the parties and the circumstances of the case justified the publication and brought the defendants within the privilege and protection of the law. The defamatory statement was not absolutely privileged, as words spoken or written by judges, jurors or witnesses in the course of judicial proceedings, or as in legislative debates, but it was at most a case of qualified privilege. Whether it was so privileged must be determined by the position occupied by the defendants, their relations to the plaintiff and to other members of the same denomination, and the circumstances under which the publication was made. If the statements were published in good faith and in the per-

formance of what was honestly deemed to be an official or moral duty toward other church members, and for the benefit and protection of the church organization at large, and there was a reasonahle occasion for the publication, it was privileged and protected.

On the face of the publication, there is no vilification, extravagant language, or evidence of a wrong motive, and it would seem that the occasion fairly justified the publication of the defamatory matter. They were officers of the church and were concerned in its welfare ; the conduct and character of the plaintiff as their pastor had become a subject of official inquiry ; and it had been found that he was "void of the spirit of Christ," insubordinate, disorderly, and unworthy of the confidence of the brotherhood.   The result of their inquiry was a matter of interest not only to them and the church at Wilmington, but to other members of their church organization throughout the country.   If the plaintiff was unworthy or unfit to discharge the sacred functions of his high calling, the defendants, interested in the welfare of the denomination throughout the land, would appear to have been justified in warning other members and congregations of that organization to whom the plaintiff might offer his services as pastor.   If the publication was *prima facie* privileged, it devolved on the plaintiff to allege and prove that it was both false in fact and malicious in purpose.   Instead of showing actual malice, the plaintiff called two of the defendants as witnesses, who showed plainly enough that they were free from malice, and that the defendants honestly believed that duty and the interests of the denomination required that their fellow members living elsewhere should be informed of the character and conduct of

the plaintiff. Instead of showing malice, as he was required to do, the plaintiff proved pure motive and a justifiable occasion for the publication.

In *Shurtleff v. Stevens*, 51 Vt. 501, it was held that the good name and standing of every member of such an organization is a matter of common interest to all the rest, and that all are affected by the fidelity with which their preachers perform their sacred functions. In the opinion it was stated :

"In order to be successful public teachers of morality, they must be unspotted public exemplars of it. Hence, if it be suspected that a wolf in sheep's clothing has invaded their ranks, and sits at their council board, it is not only for the interest of all the members of the association to know the fact, but it is their imperative duty to make inquiry and ascertain the fact. They owe such duty to the plaintiff as a brother member, if he is charged with scandalous conduct, to the end that his innocence may be established. They owe it to themselves, lest by indifference they give apparent approval to his conduct. Their intimate official relation to the plaintiff in the cause of their common work leaves them no other alternative ; and if, in making such inquiry and in acting upon the subject-matter of it, they proceed with honesty of purpose and act from a sense of duty, the law protects them."

It was further held that the character and conduct of a clergyman is a matter of public interest, not limited to the narrow circle of his parish, and the publication that action had been taken upon charges made against a clergyman in two of the church papers did not forfeit the protection of the privilege which the law affords.

It is contended that by the general publication in the papers the defamatory matter was circulated outside the church members, and therefore the privi-

lege was lost.    The communication appears to have been made in good faith, and manifestly for members of the denomination alone.    As has been seen, it was published only in church papers, and the fact that the publication may have incidentally been brought to the attention of others than members of the Church of Christ will not take away its privileged character.    In *Toogood v. Spyring*, 1 C. M. & R. 180, it was held that publications made in good faith in discharge of a public or private duty are protected for the common convenience and welfare of society, and that the law does not restrict the privilege within any narrow limits. It was further remarked : ''I am not aware that it was ever deemed essential to the protection of such a communication that it should be made to some person interested in the inquiry, alone, and not in the presence of a third person.''    See, also, *Farnsworth v. Storrs*, 5 Cush. 412 ; *Kelly v. Sherlock*, L. R., 1 Q. B., 686, 698.

The objection that the matter privileged was not specifically pleaded is of no importance, since the defendants were not called upon to make a defense. The burden of proof, as we have seen, was upon the plaintiff to establish actual malice, and having himself disproved malice, he failed to establish a liability against the defendants, and the case was rightfully taken from the jury.    (*Kirkpatrick v. Eagle Lodge*, 26 Kan. 384.)

The judgment of the district court will be affirmed.