[No. 4468. Decided April 27, 1903.]

JAMES F. LEGHORN, *Appellant,* v. REVIEW PUBLISHING COMPANY, *Respondent.*

LIBEL — TRUTH AS A DEFENSE.

In a civil action of slander or libel, the truth of the matter published is a complete defense.

SAME — VARIANCE.

In an action for libel on account of a newspaper article charging plaintiff with abstracting money from a "special postal fund", evidence that the fund was really a "deposit made with the postmaster, as a cash bond" by a newspaper to secure the payment of postage as required by law would not constitute such a variance as to invalidate the defense set up that the alleged libelous matter was true.

SAME — SUFFICIENCY OF EVIDENCE.

Where there is no direct charge in a publication that plaintiff committed embezzlement in abstracting funds belonging to another for his own private use, but merely a statement of the facts, it would not be incumbent on defendant, in sustaining the truth of the charge, to prove all the elements of the crime of embezzlement.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*Nash & Nash* and *James Dawson,* for appellant.

*Stephens & Bunn,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This is an action to recover damages for alleged libelous articles published by respondent in the Daily Spokesman-Review of Spokane. The complaint charges four causes of action. The first is based upon a publication which appeared in the issue of November 17, 1901, as follows:

## "The Leghorn Shortage.

As United States senator dictating the federal patronage of this state, Wilson forced Fred Leghorn, an active and long time worker in his machine, upon Postmaster Temple. Later Mr. Temple and a United States postal inspector discovered that Leghorn was unfit for the place. In checking up his accounts they found that he had abstracted $100 from a special postal fund, and expended it on his private affairs. The inspector directed Postmaster Temple to remove Leghorn, and when Mr. Temple performed his sworn duty, he excited the violent anger of John L. Wilson. Notwithstanding Wilson was advised of the reasons for Leghorn's removal, he called on Mr. Temple at the postoffice and upbraided him in violent language. 'You've played h—l now, haven't you?' was the undignified salutation, and when Mr. Temple asked him what was his meaning, he replied that he meant the removal of Leghorn. No one knew better than Wilson knew it that the position of assistant postmaster was one of extraordinary financial trust. The monetary transactions of this office aggregate more than three million dollars per annum, and it is of the greatest importance that the assistant postmaster be a man of the highest standards. Wilson had special reason to be impressed with the force of this obligation, for an assistant postmaster of his selection, under the postoffice administration of Arthur J. Shaw, had embezzled several thousand dollars and killed himself when confronted with his crime. But notwithstanding his knowledge of the great responsibility of the office, and the fact that Leghorn's removal had been directed by the postoffice inspector for cause, Wilson wanted him retained in office, and was violently angry because of his removal. It is disclosures of this nature, revealing Wilson's unscrupulous methods, that have shocked the public and compelled conscientious and honorable republicans to withdraw their support from him. They are deeply impressed with the conviction that so long as the Wilson machine is dominant in the party councils there can be no lasting peace or victory."

The second, third and fourth causes of action are based upon three separate publications of the same article, which appeared in the issues of said paper on December 13, 14, and 15, respectively, 1901, set out in the complaint as follows:

"Facts About Leghorn Matter.

Corrections of Articles Appearing in the Spokesman-Review of November 16.

The article published November 16th contained the following statement: 'Postmaster Temple removed Fred Leghorn as his assistant because of an alleged shortage of $100 in Leghorn's accounts.' The Spokesman-Review now ascertains that this was one of the causes contributing to his removal."

The whole article appearing in the issues of the paper of December 13, 14, and 15 is as follows:

. "Facts About Leghorn Matter.

Correction of Articles Appearing in The Spokesman-Review of November 16 and 17.

The Spokesman-Review has ascertained that the articles regarding the Leghorn shortage, published in the papers of November 16 and 17, should be corrected in the following particulars: The article published November 16 contained the following statement: 'Postmaster Temple has removed Fred Leghorn as his assistant because of an alleged shortage of $100 in Leghorn's accounts.' The Spokesman-Review now ascertains that this was one of the causes contributing to his removal. The same article said: 'The shortage occurred, according to Mr. Temple, several months after Leghorn was appointed, which was in February, 1898.' Leghorn was not appointed assistant postmaster until March, 1898. In the article published November 17 the following statement was made: 'In checking up his accounts they found that he had abstracted $100 from a special postal fund, and expended it on his private affairs.' The fund from which the $100 was abstracted was a special trust fund, deposited by a newspa-

per of this city with the postmaster, for the payment of postage on second class matter. In the same article the following appears: 'The inspector directed Postmaster Temple to remove Leghorn.' The facts were that the inspector pointed out to Mr. Temple the seriousness of such offense and the sacredness of the trust fund. The last mentioned article contained the following statement: 'And the fact that Leghorn's removal had been directed by the postoffice inspector for cause,' while the facts were as indicated in the preceding paragraph. The Spokesman-Review is glad to make these corrections. First, because it is always willing to correct any inaccuracies or errors which it may make. Second, because the law requires it shall do so."

The answer of the defendant admits the publication of the articles set out above, and alleges the truth of each of said articles in so far as they refer to the plaintiff; also that at the time of the publications the plaintiff was a candidate for appointment to the office of postmaster of the United States postoffice at Spokane, and was at said time deputy assessor of Spokane county, Washington; further, that after the publication of the article of November 17, 1901, the plaintiff notified defendant that the fund referred to therein was not a postal fund, but was a fund deposited with the postmaster for the purpose of securing the collection of postage upon second class mail matter, and also notified defendant that the said article was false and defamatory; that, in order to correct any erroneous, false, or defamatory matter in said article, defendant published the articles of the 13, 14, and 15 of December, 1901, within three days after notice of the mistake, and in as conspicuous a place and type as the original was published in, as required by the laws of 1899 (Laws 1899, p. 101); that said articles contain full and fair corrections of any and all mistakes and misappre-

hensions occurring in the articles of November 17, 1901; and that each and all of said articles were true and published in good faith. The plaintiff's reply admitted that he was a deputy assessor of Spokane county when the articles were published, but denied all the other allegations of the answer. At the trial, after the plaintiff had introduced his evidence, the court, upon motion of defendant, granted a nonsuit as to the first cause of action, and denied a like motion as to the second, third, and fourth causes. These three last named causes were submitted to the jury, which returned a verdict in favor of the plaintiff for $1,000. Thereafter plaintiff moved for a new trial as to the first cause of action, and the defendant moved for a judgment notwithstanding the verdict. The motion of plaintiff was denied, the motion of defendant for judgment notwithstanding the verdict was granted by the court, and the action dismissed. Plaintiff appeals from the judgment of dismissal.

The main question in the case is whether, under the pleadings and the proof, the court should have taken the case from the jury at the close of plaintiff's evidence by granting defendant's motion for nonsuit. The rule of law seems to be well settled that the truth of a matter published is a complete defense in a civil action of either slander or libel. Townsend, Libel & Slander (4th ed.), § 211; Odgers, Libel & Slander (Bigelow ed.) *p. 169; Newell, Slander & Libel (2d ed.), p. 651, § 68; 1 Jaggard, Torts, p. 521; 18 Am. & Eng. Enc. Law (2d ed.), p. 1067; *Haynes v. Spokane Chronicle Pub. Co.,* 11 Wash. 503 (39 Pac. 969).

The statute, at § 4994, Bal. Code, provides:

"In all cases tried in the superior court with a jury in which the legal sufficiency of the evidence shall be challenged, and the court shall decide as a matter of law what

verdict shall be found, the court shall thereupon discharge the jury from further consideration of the case, and direct judgment to be entered in accordance with its decision."

This court has frequently held the rule to be that where there is no conflict or dispute in the evidence, and where the evidence is certain and incontrovertible, and but one conclusion can be reasonably drawn therefrom, the question then becomes a question for the court, and not for the jury. In this case there is no conflict or dispute in the evidence. The plaintiff assumed the burden of proof, and introduced evidence to the effect that he was assistant postmaster of the Spokane postoffice from March, 1898, until October, 1899; that it was his duty, as assistant postmaster, to keep the books and accounts of the office, and in the absence of the postmaster, to perform the duties of the postmaster; that on June 14, 1898, he took $100 from a fund in the possession of the postmaster, and applied it to his own private use; that the postmaster was away at the time; that, shortly after plaintiff had taken the money, a United States postoffice inspector came to inspect the office; that "he found a deposit made there as a cash bond by the Spokesman-Review for the purpose of securing the postmaster for trusting them, that I had taken $100 out of it in the afternoon; and I told him I took it, and as soon as the bank opened in the morning I would refund it. I was unable to get the money from the bank that afternoon; the bank was closed before I got back from the house with my wife's signature to the note, and next morning, as the bank opened, I took the note to Mr. Cowley and got the money, and came back and put the money back there, and Mr. Linn [the postoffice inspector] and Mr. Temple [the postmaster] never asked me for it, and have not spoken to me about it from that day to this;"

that the deposit from which the money was taken is permitted by the postal regulations; that credit can not be allowed by postmasters for mailing second-class mail matter, but the postmaster may require a deposit sufficient to cover the postage for a given time, and hold the money as security for the payment of the monthly bill for postage upon demand; that this money was deposited by the Spokesman-Review with the postmaster, Mr. Temple, for that purpose; that the postmaster came into the office a short time after the inspector had discovered the shortage, and plaintiff told him of it, whereupon the postmaster said: "That's all right." Plaintiff also testified that he had no right to take the fund, and that he knew it. He also testified that he was discharged by the postmaster several months after this occurrence, but that at the time of his discharge the matter of the shortage was not mentioned; that the real cause of his discharge was because the postmaster was paying him $25 per month out of his own salary, and that by this discharge the postmaster saved this amount monthly. This was the evidence of the plaintiff himself. There was no dispute of these facts, and there is no room for two opinions therefrom. The four causes of action all rest upon the same ground, viz., the falsity of the publication. If the publication of the 17th of November, 1901, was true in fact, there is no liability against the defendant for that cause. The other three causes are based upon three publications which purport to be a correction of some minor points in the first publication. These three publications are not, and do not purport to be, "a full and fair retraction of any statement" in the publication of November 17th, but are, in effect, a reiteration of the truth of the original publication, with corrections in unimportant particulars. If there was no liability on ac-

count of the first cause, there can be none upon the others, for the truth of the last publication follows from the truth of the first. The matter complained of in the first publication is that the plaintiff "had abstracted $100 from the special postal fund." The evidence of the plaintiff clearly and distinctly shows that he had, without right or authority, taken $100 from the fund deposited with the postmaster for a special purpose, and this is substantially the charge of the publication. The charge in the publication is that "in checking up his accounts they found that he had abstracted $100 from a special postal fund, and expended it on his private affairs." This is substantially what plaintiff himself says he did. The only possible difference between the testimony of plaintiff and the charge in the publication is that plaintiff says he took the money from a "deposit made there as a cash bond," while the publication says he abstracted it "from a special postal fund." While it is true that this money did not belong to the United States, except that part earned as postage, and was not a postal fund in the sense that it actually belonged to the United States, still it was held by the postmaster as security for a single purpose, viz., the payment of postage; and the testimony shows that the postmaster was authorized to take therefrom whatever was necessary to pay postage due the United States government, and for no other purpose. It was deposited with him to pay or insure the payment of such postage, and was, therefore, while it was on deposit with the postmaster, as much "a special postal fund" as a "deposit made there as a cash bond." It had no recognized name as a particular fund. The plaintiff described it by one name; the defendant, by another. Both meant the same fund. There is no substantial difference between the proof and the matter published. *Haynes*

v. *Spokane Chronicle Co., supra; Hall v. Elgin Dairy Co.,* 15 Wash. 542 (46 Pac. 1049).

Appellant argues that, to sustain the plea of the truth of the charge, respondent must prove "(1) that the $100 was taken fraudulently and with felonious intent; and (2) that it was taken from a special postal fund"—in other words, that all the elements of the crime of embezzlement must appear. The rule seems to be that where a particular crime is charged, or where facts which constitute a crime are charged, then all the elements thereof must be proved as charged. In the publications complained of, there is no direct charge of a particular crime, but the facts themselves are stated. Conceding the rule to be as contended for by the appellant, we think the facts in this case, which appear from the evidence of the plaintiff himself, show all that is charged in the publication. He says he took the money, knowing the character and purpose of the fund, and that he had no right to take it. He used it to pay a private debt. He could not and did not return it until after discovery of the fact that he had wrongfully taken it. It is true, he intended to return it and did return it on the next day, but in the mean time his act had been discovered. If some misfortune had befallen him, as is frequent in cases of this character, so that he could not have borrowed the money to have replaced that taken, he could not have defended successfully against a prosecution for embezzlement during the time the money was not replaced. When it was shown that he had no right to take the money, and that he knew that fact, all the inferences which arise from a charge that the money was *"abstracted"* necessarily follow. We think the evidence in this case clearly shows the truth of the publications, not only as to the first but as to the other three causes of action, in so far

as the publications referred to the plaintiff, and that it was therefore the duty of the court to dismiss the action upon the motion of defendant at the close of plaintiff's case.

 The judgment is therefore affirmed.

ANDERS and DUNBAR, JJ., concur.

FULLERTON, C. J., not sitting.