[No. 10198.   Department Two.   June 26, 1912.]

W. A. BASS, *Appellant*, v. MARK A. MATTHEWS, *et al.*, *Respondents.*[1]

LIBEL AND SLANDER—PRIVILEGED COMMUNICATION—CHURCH PROCEEDINGS—REPORT OF COMMITTEE AS MALICE. A church committee's report upon an investigation of a minister who desired to be called, made according to the established rules of the church of which the minister was a member, is absolutely privileged, whether it contains matter libelous *per se* or not; and when on its face it shows that it was made in good faith, it disproves malice.

Appeal from a judgment of the superior court for King county, Myers, J., entered October 27, 1911, dismissing an action for libel, upon sustaining a demurrer to the complaint. Affirmed.

*Irving H. Randolph* and *George E. Beardslee*, for appellant.

*Austin E. Griffiths*, for respondents.

MOUNT, J.—The plaintiff brought this action to recover damages for an alleged libel. The trial court sustained the defendants' demurrer to the amended complaint. Plaintiff refused to plead further, and the action was dismissed. Thereupon this appeal was prosecuted.

The complaint alleges that the plaintiff was one of the ministers of the presbytery of Seattle, a subdivision of the Presbyterian church in the United States within the synod of Washington; that from July, 1908, to April 1, 1909, the

[1]Reported in 124 Pac. 384.

plaintiff occupied the pulpit of Lake Union Presbyterian church, at Fremont, in Seattle; that on April 16, 1909, the presbytery of Seattle adopted a resolution whereby five of the defendants were constituted a commission to investigate "all matters pertaining to the condition now existing in the Lake Union or Olivet church, and be empowered to act in the premises and report to the next meeting of the presbytery;" that on May 11, 1909, the committee made its report, which is set out at length in the complaint. This report, and the fact that a notice was posted on the door of the church that the report would be read in the church on a certain day, and was so read and published and sent through the mails, is made the basis of this action.

It appears from the complaint that the plaintiff, in March, 1909, had been acting as stated supply for the Lake Union or Olivet church for several months. He desired to be called as such stated supply for the ensuing year. At a meeting of the church held for that purpose, the plaintiff and certain members became dissatisfied with certain rulings, and left the meeting, and thereafter sought to establish another church. This condition called forth the appointment of the commission above referred to by the presbytery of Seattle. The first five pages of the report deal with the affairs of the Olivet church. The report then continues concerning the plaintiff:

"The commission takes pleasure in recording that there is testimony to the fact that Mr. Bass is an able preacher and a hard worker. We take pleasure also in recording that he has exhibited talents of zeal well adapted to edify the church of Christ were they balanced by more quiet deliberateness, calm judgment and gentle, Christlike spirit. The commission is constrained to express its deep concern at the uncharitable and contentious spirit exhibited by him at the annual meeting of the church on March 31, 1909, and before the commission when it was convened in the church to hear Mr. Bass and his adherents. They are still more deeply concerned at the want of candor and frankness and evident attempts at evasion by Mr. Bass when called per-

sonally before the commission. This evasion and want of candor has been exhibited by no other parties on either side of this unhappy controversy."

The report then reviews the work of Mr. Bass since he was ordained into the ministry, stated the different pulpits he had occupied, and the condition of the churches when he came to them, his length of stay, and the progress of the church during his stay, showing that in about five out of six churches the membership had decreased. The report states: "This record is compiled from the minutes of the general assembly of the Presbyterian church in the United States from the year 1893 to the present time." The report then, after reviewing other matters, concludes:

"That the Lake Union church as at present organized should be sustained and supported as the alleged occupant of the territory known as the Lake Union field . . . . that the session be granted permission to supply its own pulpit until a stated supply be regularly secured or a pastor called."

It is argued by the appellant that this report sets the plaintiff out as a failure in the ministry of the church, and is libelous *per se*. We think the report is not libelous *per se*. But we need not discuss that question; because, if we concede that it is so for the purposes of this case, we are satisfied that the report was privileged. The plaintiff desired to be called or retained for the ensuing year as a stated supply in the church. Each member of that church, as well as the members of the superior governing body, had a right to know his faults as well as his merits, and they had a clear right to inquire into and disclose the matters concerning which the report was made. The investigation made was according to established rules of the church of which the plaintiff was a member, and to which he was bound to submit. 25 Cyc. 390; *Shurtleff v. Stevens*, 51 Vt. 501, 31 Am. Rep. 698. The report upon its face is so clearly made in good faith that it disproves whatever of malice may be alleged in the

complaint.  *Redgate v. Roush,* 61 Kan. 480, 59 Pac. 1050, 48 L. R. A. 236.

There is no merit, either in the appeal or in the case.  The judgment is therefore affirmed.

ELLIS, MORRIS, and FULLERTON, JJ., concur.