The State of Kansas, *Appellee,* v. Nick Chiles, *Appellant.*

No. 18,499.

SYLLABUS BY THE COURT.

1. Libel—*Evidence—Oral Declarations and Other Printed Articles by Defendant—Competent to Show Malice.* In a prosecution for libel against a publisher who charged in his newspaper that a certain fraternal beneficiary society was a "fake order" and had béen proven a "skin-game" it appeared that the defendant had been defeated in a civil suit against the society and had then declared that he would break it up and put it out of business. Thesé declarations were followed by a series of articles reflecting on the society. *Held,* they were all admissible in evidence to prove malice, and that the entire article in which the defamatory matter occurred was also admissible.

2. ——— *Beneficiary Society — Report of Special Examiner—Competent Evidence.* The report to the superintendent of insurance of a special examiner duly appointed to investigate and report upon the affairs of the society was admissible in evidence to prove the lawful character of the society and of its business, and to prove the falsity of the publication complained of.

3. ——— *Trial—Limiting Evidence within Certain Dates—Not Error.* The trial court had the right to confine the investigation of the affairs of the society within reasonable limits of time. The libel spoke as of May 5, 1911, and a ruling that the parties should not go back of November 30, 1909, the date of the defendant's defeat in the çivil suit, did not constitute an abuse of discretion.

4. ——— *Report to Superintendent of Insurance—Showing Society's Finances—Competent.* The state of the society's finances from January 1, 1908, to October 31, 1910, was shown. Its report to the superintendent of insurance for the years 1910 and 1911 were offered in evidence by· the defendant. They disclosed no important change in the society's condition. *Held,* the reports were proper evidence, but that their rejection was error without prejudice.

5. ——— *Wisdom of Society's Plan of Insurance—Not in Issue.* Evidence was rejected which the defendant claimed justified him in publishing concerning the society that it was unable to conduct its business and meet its obligations under its plan

of insurance. *Held*, the wisdom of the society's plan of insurance and its ability to meet its obligations according to that plan were beside the issue, the defamatory charge being that the society was a fake order and a skin game, that is, was not what it purported to be but was a confidence game operated for the purpose of cheating, fleecing, and swindling. *Held* further, the evidence was not important because the issue of whether or not the society did in fact fleece people was fully tried.

6. ———— *Privileged Communication—Instructions.* It was not error to refuse a requested instruction relating to privilege when the law on that subject was correctly stated to the jury with sufficient fullness in instructions framed by the court.

Appeal from Wyandotte district court, division No. 2; F. D. HUTCHINGS, judge. Opinion filed November 8, 1913. Affirmed.

*Dorsey Green,* of Kansas City, for the appellant.

*John S. Dawson,* attorney-general, *James M. Meek,* county attorney, and *Clyde C. Glandon,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of libel and appeals.

The defamatory matter was published in the defendant's newspaper, the Topeka *Plaindealer,* on May 5, 1911, and consisted in statements that the Knights and Ladies of Protection, a fraternal beneficiary society, had been "proven a skin game," had the brand of "fake" placed on it, and was a "fake order" of which the people should beware.

In November, 1909, a judgment was rendered against the defendant in an action which he had brought against the society to recover the sum of $200. Soon afterward he made the declaration that he would compel the society to pay him that money or break it up and put it out of business. This declaration was made in substance to different persons, and was later fol-

lowed by a series of articles savagely attacking the society, which appeared in the *Plaindealer* on October 7, 1910, October 21, 1910, April 8, 1911, and May 5, 1911. The last article contained much intemperate matter of the same character as that upon which the information was based.

The principal errors assigned relate to rulings concerning the introduction of evidence.

All the newspaper articles referred to and all of the article in which the defamatory matter appeared were introduced. This was clearly proper. The animus of the defendant was an issue and whatever threw light on that subject was admissible. The verbal declaration that he would break up the society was, of course, relevant, and his subsequent conduct, including the printing of statements consistent with his expressed intent, tended to establish guilt. The true meaning and character of the newspaper excerpts embodied in the information were elucidated by presenting to the jury the setting in which they occurred. The purpose of this evidence and the extent to which the jury might consider it were properly stated in an instruction which the court gave.

The superintendent of insurance, under authority vested in him by law, appointed a special examiner to investigate whether or not the affairs of the society were in an unsound condition and whether or not it was transacting business contrary to the insurance laws of the state. The examiner's report was admitted in evidence on behalf of the state. It was dated January 12, 1911, and gave the results of his investigation of the transactions and finances of the society from January 1, 1908, to October 31, 1910. It was followed by the issuance of a certificate to the society dated March 1, 1911, reciting that it had complied with the requirements of the law and was authorized to carry on its business until the last day of February, 1912. It was an official document of the insurance

department of the state and tended to establish the lawful character of the society and of its business and the falsity of the defendant's charge that the society was a fake and a skin game. No reason for excluding this evidence accompanies the assignment of error relating to it and none is apparent.

One Dennis Hope claimed that the society owed him $50 on a note, and his testimony concerning it was stricken out. It was an old claim originating long prior to the time the managers of the society during the years 1909, 1910, and 1911 took office. The witness admitted that their refusal to pay the note was based on the fact that it was not an obligation of the society, and there was nothing whatever to indicate that it was repudiated through dishonesty. But besides this, the transaction out of which it arose so far antedated the publication of the libel, and the conduct and management of the society's business about that time, that it fell outside the limits to the investigation which the court was necessarily compelled to fix. The libel spoke as of May 5, 1911. The court ruled that the parties might go back as far as the judgment against the defendant in November, 1909. The period thus defined afforded ample opportunity for justification of the defendant's statements, if there was any, and consequently the court's discretionary power was not abused. The same considerations dispose of an assignment of error relating to the rejection of testimony offered by the defendant as a witness in his own behalf.

The defendant offered in evidence the reports made by the society to the superintendent of insurance showing the condition of its business for the years 1910 and 1911. The evidence was rejected. The state of the finances of the society to October 31, 1910, had been shown, but the court might well have allowed the defendant to complete the proof, at least to the date the article complained of was published. The defendant did not take the trouble to abstract these reports and

the transcript is not in the files; consequently the assignment of error relating to the ruling in question might well be ignored. The court, however, has examined the documents as they appear in the published reports of the superintendent of insurance and is unable to say that they would have strengthened the defendant's case. They disclose no important change in the affairs of the society, and the defendant had abundant basis for all legitimate inferences which he might wish to draw respecting its finances in the evidence already before the jury.

The defendant also offered to show that the rates set out in the constitution and by-laws of the society were not sufficient to pay its death losses, or to mature its policies, and pay its operating expenses, and that under the reports of the society only about one-third of the rate levied is used or can be used or made available for the purpose of paying death losses. This offer was accompanied by a statement that it was made for the purpose of justifying the defendant in publishing of and concerning the society that it was practically unable to meet its obligations and conduct its business under the law or under its plan of insurance. This evidence was rejected. The only law which the defendant claims the society violated is section 4311 of the General Statutes of 1909. This statute limits the right of a fraternal beneficiary society to begin issuing certificates until certain conditions are complied with and has no bearing on the present status of the society. The defendant was not prosecuted for publishing that the plan of the society was unwise and could not be fulfilled, and that it would not be able to meet its obligations. He was prosecuted for imputing to it dishonesty of purpose and depravity in conduct. What he said was that the society was a fake order and a skin game, that is, that it was not what it pretended to be but was a confidence game operated for the purpose of cheating, fleecing, and swindling. The only

benefit, therefore, the defendant could have derived from the evidence would have been to argue to the jury that the plan of the society was so impractical and unsound that for its managers to operate it at all was to trick, deceive, cheat, and swindle. Such an inference would have been quite fanciful, but beyond this, the square issue of whether or not the society was fleecing the people was fully tried. The defendant undertook to name specific instances and transactions and the society undertook to explain them. The real merits of the controversy were in fact fully investigated, and the remote and indirect evidence rejected would not have changed the result.

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (Crim. Code, § 293.)

There was no evidence to support the statement that the society had been proven a skin game. The defendant had been tried for libel and the jury disagreed. He claimed that this amounted to an acquittal for him and proof of the disreputable character of the society. The libelous matter appeared in the defendant's published account of that trial. On this state of facts the defendant requested an instruction relating to the privilege of the press concerning reports of judicial proceedings. While the requested instruction was not given in terms, the court did instruct the jury fully in accordance with the doctrines announced by this court in the cases of *The State v. Balch,* 31 Kan. 465, 2 Pac. 609; *Redgate v. Roush,* 61 Kan. 480, 59 Pac. 1050, and *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281.

Finding no error in the record which prejudicially affected the defendant's substantial rights, the judgment of the district court is affirmed.