[No. 19349. Department One. December 28, 1925.]

THE STATE OF WASHINGTON, *Appellant*, v. A. M. WILSON et al., *Respondents*.[1]

[1] LIBEL (50)—CRIMINAL RESPONSIBILITY—INDICTMENT AND INFORMATION—SUFFICIENCY. An information sufficiently charges libel, under Rem. Comp. Stat., § 2424, where it charges defendants with maliciously signing a recall petition falsely charging a city attorney with misconduct in office tending to expose him to contempt or to deprive him of public confidence or to injure him in his business.

[2] SAME (48)—CRIMINAL RESPONSIBILITY—DEFENSES—PRIVILEGE— QUALIFIED PRIVILEGE OF RECALL PETITION. False charges against a public officer, made in a recall petition, are only qualifiedly and not absolutely privileged; and in a criminal prosecution therefor, malice, being alleged, may be inferred from the necessary tendency of the charges, under the express provisions of Rem. Comp. Stat., § 2424.

[3] CONSTITUTIONAL LAW (59) — LIBEL (1) — PERSONAL CIVIL AND POLITICAL RIGHTS—FREEDOM OF SPEECH—LIBEL IN RECALL PETITION. The provisions of Const. Art. 1, § 19, that all elections shall be free and equal does not furnish immunity for a voter's false and malicious charges in a recall petition of a public officer, constituting criminal libel under Rem. Comp. Stat., § 2424.

Appeal from a judgment of the superior court for Cowlitz county, Campbell, J., entered March 27, 1925, dismissing a prosecution for criminal libel, upon sustaining a demurrer to the information. Reversed.

*The Attorney General, Hite Imus,* and *R. J. Quinn,* for appellant.

*John T. Casey,* for respondents.

HOLCOMB, J.—The first named respondent and thirteen others were informed against by the prosecuting attorney in and for Cowlitz county, charged with crim-

[1]Reported in 241 Pac. 970.

inal libel. A demurrer to the information was sustained, upon which the prosecution was dismissed and this appeal results.

The information charges the offense as follows:

"They [naming the defendants] on or about the 27th day of February, A. D. 1925, in the county of Cowlitz, state of Washington, then and there being, did then and there maliciously sign their several and respective names to a certain writing and document which was and is in words and figures following, to-wit:

"Petition for recall of J. E. Stone, city attorney of the city of Kelso, Cowlitz county, state of Washington.

"To the Honorable Lucien B. Crawford, city clerk of said city of Kelso:

"We, the undersigned electors of said city of Kelso, Cowlitz county, Washington, being a committee of legal voters residing in the city of Kelso, respectfully request and direct that a special election be called to determine whether or not said J. E. Stone now acting as said city attorney for the said city of Kelso shall be recalled from said office, for and on account of having violated his oath of office, to-wit:

"Said J. E. Stone has entered into a conspiracy with the violators of the liquor laws of the state of Washington, the United States of America, and the ordinances of the city of Kelso, as evidenced by his determined effort to keep a police force which has proven totally incompetent on enforcing the laws, and which he knows to be protecting immoral women, bootleggers and gamblers within said city of Kelso.

"That said J. E. Stone, as such city attorney, has committed many acts of misfeasance and malfeasance while in office, to obstruct and prevent the executive officials of said city of Kelso from performing their ordinary duties for the welfare of said city and its citizens, in violation of his oath of office to faithfully perform and discharge the duties of said offices to the best of his ability.

Name                    Post Office Address
A. M. Wilson, N. 3rd St., Kelso, Washington,
F. P. Rawson, 1127 N. Front St., Kelso, Washington,
E. C. Philipsen, 615 So. 3rd St., Kelso, Washington,
J. P. Bittle, Northinner St., Kelso, Washington,
Geo. Glisson, 1124 N. 2nd St., Kelso, Washington,
M. J. Stevenson, 8th Oak St., Kelso, Washington,
M. Warren, 407 5th St., Kelso, Washington,
Ben Horton, 1208 N. Front St., Kelso, Washington,
E. F. Hatch, 820 Burcham & River Sts., Kelso, Wn.,
Mark E. Watson, 9th & Lord Sts., Kelso, Wash.,
Jacob G. Dahl, So. 7th St., Kelso, Washington,
N. A. McLeod, 206 North St., Kelso, Washington,
John Hardinger, 423 N. 4th St., W. Kelso, Wash.
F. S. Janes, 909 S. 4th St., Kelso, Washington.

State of Washington, County of Cowlitz, ss.

"Now on this 25th day of February, 1925, before me, Lawrence Perry, a notary public in and for the state of Washington duly commissioned and sworn, personally came A. M. Wilson, F. P. Rawson, E. C. Philipsen, J. P. Bittle, Geo. Glisson, M. J. Stevenson, M. Warren, Ben Horton, E. F. Hatch, Mark E. Watson, Jacob G. Dahl, N. A. McLeod, John Hardinger and F. S. Janes, to me known to be the individuals described in and who executed and signed the foregoing petition for re-call, and they acknowledged to me that they signed and sealed the same as their voluntary act and deed, for the uses and purposes therein mentioned.

"Witness my hand and official seal the day and year in this certificate first above written.

                    Lawrence Perry,
(L. S.)        Notary public in and for the state of
                    Washington, residing at Kelso, therein.

"And they the said defendants caused the said writing and document, described as aforesaid, to be deposited and filed in the office of the city clerk of the city of Kelso, in said county and state on the 27th day of February, 1925; the said city of Kelso being then and there a city of the third class duly organized and existing under the laws of the state of Washington, and situated in said Cowlitz county, Washington, and thereby published said document, and the said document and

articles were read by various persons in said city, county, and state; and they the said defendants well knew at the time of signing said document and at the time of filing same as aforesaid that the charges therein stated were false and untrue.

"That the said document and writing tended to expose J. E. Stone in his capacity as a private citizen, in his official capacity as city attorney of the city of Kelso; of which he was then and there the duly elected, qualified and acting city attorney; and his professional capacity as a practicing attorney-at-law, to hatred, contempt, ridicule and obloquy and to deprive him of the benefit of public confidence and social intercourse, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

It will be observed that the information alleges that respondents signed their names maliciously to the document denominated a recall petition; that they well knew at the time of signing the same, and at the time of filing the same, that the charges therein stated were false and untrue; that the writing tended to expose J. E. Stone in his capacity as a private citizen, in his official capacity as city attorney of Kelso, of which he was then and there the duly elected, qualified acting city attorney; and in his professional capacity as a practicing attorney at law to hatred, contempt, ridicule and obloquy, and to deprive him of the benefit of public confidence and social intercourse, etc.

The statute upon which the information is based defining criminal libel, § 2424, Rem. Comp. Stat., is as follows:

"Every malicious publication by writing, printing, picture, effigy, sign or otherwise than by mere speech, which shall tend: (1) to expose any living person to hatred, contempt, ridicule, or obloquy, or to deprive him of the benefit of public confidence or social intercourse; or  .  .  .   (3) to injure any person, corpora-

tion or association of persons in his or their business or occupation, shall be libel.''

[1] The defamation set forth in the information was in a written instrument. It is alleged to be false and malicious. Its language is such as to expose ''any living person to hatred, ridicule, contempt or obloquy, and to deprive him of the benefit of public confidence and social intercourse.'' The natural effect of the language is to injure a person in his business or occupation.

There is no doubt, therefore, that the defamation set forth in the information is libelous under the criminal statute above quoted, and actionable, unless it is privileged.

[2] Respondents contend that the matter complained of is *absolutely* privileged. They cite cases where we have held that allegations in judicial proceedings either in pleadings or affidavits are absolutely privileged, and exempt the utterer thereof from civil libel. *Abbott v. National Bank of Commerce,* 20 Wash. 552, 56 Pac. 376; *Bass v. Matthews,* 69 Wash. 214, 124 Pac. 384; *Miller v. Gust,* 71 Wash. 139, 127 Pac. 845; *Houghton v. Humphries,* 85 Wash. 50, 147 Pac. 641, L. R. A. 1915E 1051.

On the other hand, respondents also contend that the matter involved was alleged in a recall petition which we have held to be purely political in its nature; *Cudihee v. Phelps,* 76 Wash. 314, 136 Pac. 367; that therefore it is determinable only at the polls.

We have always held that allegations contained in pleadings filed in a court of competent jurisdiction are absolutely privileged where they are relevant and pertinent to the case, regardless of their falsity or maliciousness. *Abbott v. National Bank of Commerce, supra,* and *Miller v. Gust, supra.* We have also held in

*Houghton v. Humphries, supra,* that a judge of a court is absolutely exempt from liability in civil damages for words of a slanderous nature spoken by him of one of the attorneys in the course of a judicial proceeding over which he was presiding.

We also held in *Bass v. Matthews, supra,* that a church committee's report upon investigation of a minister made according to the established rules of the church of which the minister was a member, was absolutely privileged, whether libelous *per se* or not, when on its face it showed that it was made in good faith.

It is an ancient rule, followed almost universally and recognized by this court in the foregoing cases, that, when exemption from liability for the use of slanderous words is sought to be invoked by a private person, or uttered in the course of a judicial proceeding, such exemption is *qualified* in that the words must be relevant to the proceeding in which they are spoken in order to exempt the one using them from liability for damages flowing from their slanderous effect. *Houghton v. Humphries, supra.*

But we have also held that, while at common law, of which the statute is merely declaratory as to the defense to an action for civil damages, the truth of a libelous charge, *though no defense in a criminal prosecution for libel,* was usually a complete defense in a civil action for damages. *State v. Sefrit,* 82 Wash. 520, 144 Pac. 725; *Haynes v. Spokane Chronicle Pub. Co.,* 11 Wash. 503, 39 Pac. 969; *Leghorn v. Review Pub. Co.,* 31 Wash. 627, 72 Pac. 485; *Wilson v. Sun Pub. Co.,* 85 Wash. 503, 148 Pac. 774, Ann. Cas. 1917B 442.

In the last cited case, we also approved the classification in Newell on Slander & Libel (2d ed.), p. 576, as

to what falls within the rule of qualified privilege, and was not therefore libelous *per se,* as follows:

"(1) Matters concerning the administration of the government; (2) matters relating to the administration of public justice; (3) matters relating to the management of public institutions and local authorities; (4) matters relating to appeals for public patronage; (5) matters concerning literary publications, books and pictures; (6) matters concerning the character and quality of public entertainments; (7) matters pertaining to religious bodies, churches and associations."

The last class was that involved in *Bass v. Matthews, supra.*

Respondents assert that the matter involved here is absolutely privileged because it is a matter concerning the administration of the government (of the municipality) and pertaining to the administration of public justice, and relating to the management of public institutions and local authorities.

It must be remembered that we classified the above matters as qualifiedly privileged, not absolutely privileged. When, therefore, in any matters except those pertaining to the administration of justice, where, if they fall within the matters referred to in *Abbott v. National Bank of Commerce, supra,* and *Miller v. Gust, supra,* they may constitute absolute exemption from civil liability, they may nevertheless only be conditionally privileged if violative of any criminal statute. 37 C. J., pp. 142, 143, 144; *State v. Sefrit, supra.*

In a civil action, if the matter published was libelous *per se,* it was not incumbent upon the pleaders thereof to allege untruth. That would be a matter of defense, which to be available, must be alleged and proved as such. *Wilson v. Sun Pub. Co., supra.* This being a criminal prosecution, malice is a material element, and may be inferred from the necessary tendency of the

articles, since the statutes so declare. *Wilson v. Sun Pub. Co., supra.* In a civil action malice is not an essential element. In a criminal action it is. In this case it is expressly alleged.

There is no doubt in our minds that the information charged an offense under the statute above set forth as to any writing other than possibly such writing as was here alleged.

Respondents insist that, since the recall proceeding is a purely political proceeding authorized by the constitutional amendment, Article I, §§ 33 and 34, amendment 8, and also under § 19 of Article I of the original constitution which provides that "all elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage," that the statements contained in the recall petition complained of are absolutely privileged under the constitution as much as such statements would be in a judicial proceeding to remove an officer, and that the truth or falsity thereof can only be determined by the recall election which was petitioned for.

It is argued that, if this criminal prosecution be sustained, the recall election is effectually prevented, and the effect will be to authorize such criminal prosecution and prevent the holding of recall elections.

[3] The provisions of § 19, Article I of the constitution, that all elections shall be free and equal, etc., cannot prevent the application of criminal laws to the violation of criminal statutes. The provision does not mean that voters may go to the polls at any time and vote on any question they see fit, but only at the stated times provided by the statutes relating to elections. Neither does it mean that voters, in the free exercise of the right of suffrage, may vote as many

times upon any one question or candidacy as they see
fit; although a literal construction of the language of
§ 19 might lead to that. It does not mean that elections
and voters may not be regulated and properly con-
trolled. It does not mean that voters may not be
prosecuted for violation of any provision of the elec-
tion laws which they may have violated either before
or after such elections. It does not mean that the
ordinary penal laws are set aside in favor of the recall
laws or the free exercise of the suffrage. Nor, in our
opinion, does it mean that voters are given *carte blanc*
the privilege of making any allegations or statements
concerning any officer sought to be recalled regardless
of the truth or probable truth thereof, and wholly out
of malice on the part of the malicious persons as to
such officers.

The provisions for recall elections and for the free-
dom of elections, and the free exercise of the right of
suffrage, are similar to the provisions preserving the
right of free speech. The federal and state constitu-
tions (Washington constitution, Art. I, § 5), provide
that, every person may freely speak, write and publish
on all subjects, being responsible for the abuse of that
right. But courts have uniformly agreed that freedom
of speech does not grant absolute immunity from the
penalty of slandering or libeling another.

This court has held, in *Byrne v. Funk*, 38 Wash. 506,
80 Pac. 772, 3 Ann. Cas. 647, that the official acts of
public officials may lawfully be made the subject of
fair comment and criticism, not only by the press but
by members of the public. But the prevailing rule is
that charges imputing moral delinquency to a public
officer cannot, if false, be privileged, though made in
good faith, and this though the charge relates to an
act of the officer in the discharge of his official duties.

It was further held in that case that whether the writing came within the qualified privilege as to such defamatory statements concerning a public officer was for the jury to determine.

We are firmly convinced that the defamatory matter set forth in the information was only qualifiedly privileged; that, it being alleged to have been false and maliciously uttered, it is within the proscription of § 2424, Rem. Comp. Stat.; that it is not absolutely privileged as contended by respondents, and is not protected by having been filed in recall proceedings for the recall of the defamed person.

The judgment is reversed with instructions to overrule the demurrer, reinstate the cause, and proceed in conformity herewith.

TOLMAN, C. J., ASKREN, MAIN, and FULLERTON, JJ., concur.