[No. 52341–0. En Banc. May 7, 1987.]

DON HERRON, ET AL, *Appellants*, v. THE TRIBUNE PUBLISHING COMPANY, INC., ET AL, *Respondents*.

*Rovai, McGoffin, Turner, Larkin & Miller,* by *John A. Miller,* for appellants.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* by *Valen H. Honeywell,* for respondents.

PEARSON, C.J.—This case is a defamation action brought by former Pierce County Prosecutor Don Herron[1] against The Tribune Publishing Company and one of its reporters for a series of articles published in the Tacoma News Tribune (Tribune) in August 1979. The trial court granted the defendants' summary judgment motion for dismissal, and the plaintiffs appealed. We accepted certification pursuant to RCW 2.06.030, and we affirm. The principal issues here are whether the plaintiffs provided the trial court with evidence of actual malice sufficient to withstand the summary judgment motion and, if so, whether any privilege attached to the newspaper articles based on their reporting on the contents of a recall petition. We hold that with one exception the plaintiffs did not meet their burden of proof on the element of actual malice and that in the one instance where

---

[1] Patricia Herron, Don Herron's wife, is also a plaintiff.

they raised a triable inference of actual malice the defendants are protected by a conditional privilege.

## FACTS

In August 1979, a local citizen named Ronald Lopp filed a recall petition against Don Herron, at that time the Pierce County Prosecutor. Tribune reporter Richard Sypher and other Tribune staff wrote articles and an editorial discussing the contents of the petition and the circumstances surrounding the allegations it contained.[2] The articles appeared daily for approximately 1 week, beginning on the date that Lopp filed the petition. The portions of the petition that received the most coverage and that are complained of on appeal are allegations that Herron was ineffective as prosecuting attorney, abused his prosecutorial discretion, and engaged in harassment and discriminatory prosecution. The Tribune articles reported, in addition to the petition's contents, extrinsic facts germane to these allegations. The plaintiffs complain specifically of the newspaper's discussion of (1) the sentencing of George Dutcher; (2) the dismissal of an assault charge against Richard Caliguri; (3) the prosecution of Lopp for possession of stolen property; and (4) the petition's imputation of criminal activity to Herron.

Approximately 10 months after the plaintiffs filed their complaint and shortly after the defendants moved for summary judgment, the plaintiffs moved to amend their complaint to add new causes of action and an additional defendant. The new claims, also in defamation, concerned additional Tribune articles, some published prior to the filing of the original complaint and at least one succeeding it. This second set of articles did not pertain to the recall petition charges. The trial court denied the motion to

---

[2]The articles were headlined "Recall petition filed against Herron", "Attempt to recall prosecutor not a surprise", "Legal advice asked in Herron recall", "Herron faces more recall charges", "Commissioners still awaiting word on Herron recall", "Herron disqualification asked", and "Herron turns over recall decision". The editorial was entitled "Don Herron's quandary".

amend but granted the plaintiffs a continuance to respond to the summary judgment motion. The purpose of the continuance was to give the plaintiffs an opportunity to depose members of the Tribune staff on the issue of the employees' state of mind during the publication of the second set of articles, for such evidence could bear on the defendants' state of mind at the time of the first set of articles. The plaintiffs now appeal the denial of leave to amend along with their appeal of the adverse summary judgment, and we address the amendment first.

## MOTION TO AMEND

The standard of review of a trial court's denial of a motion to amend a pleading is "manifest abuse of discretion." *Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 719 P.2d 120 (1986); *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 670 P.2d 240 (1983).

CR 15(a) provides in relevant part:

[A] party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The purposes of CR 15 are to "facilitate a proper decision on the merits", *Caruso,* at 349, and to provide each party with adequate notice of the basis of the claims or defenses asserted against him. *Pierce Cy. Sheriff v. Civil Serv. Comm'n,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983). *See generally* 6 C. Wright & A. Miller, *Federal Practice* § 1471 (1971); Trautman, *Pleading Principles and Problems in Washington,* 56 Wash. L. Rev. 687, 711–14 (1981). Leave to amend should be freely given "except where prejudice to the opposing party would result." *Caruso,* at 349; *see also* 6 C. Wright & A. Miller § 1473.

The factors a court may consider in determining prejudice include undue delay and unfair surprise. *Caruso,* at 349–51; *see also Tagliani v. Colwell,* 10 Wn. App. 227, 233, 517 P.2d 207 (1973) (citing *Foman v. Davis,* 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)). A court may consider whether the amendment to the complaint is likely

to result in jury confusion, the introduction of remote issues, or a lengthy trial. 6 C. Wright & A. Miller § 1487. The timing of a motion to amend pleadings—in terms of the progress of the litigation—may result in prejudice but otherwise is not dispositive. *Caruso*, at 349–50. Similarly, the fact that the material in the amended pleading could have been included in the original pleading will not preclude amendment, absent prejudice to the nonmoving party. *Caruso v. Local 690, Int'l Bhd. of Teamsters, supra.* In all cases, "'[t]he touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party.'" *Del Guzzi*, 105 Wn.2d at 888.

The language of CR 15(a) does not limit amended complaints to those transactions or occurrences forming the basis of the original pleadings. On the contrary, construing CR 15 as a whole and in particular with CR 15(c), CR 15(a) would appear to permit amended complaints based on new or additional transactions or occurrences. CR 15(c) governs the "relation back" of amended pleadings and states: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading." CR 15 thus seems to contemplate added claims or defenses which do not arise out of the same occurrence set forth in the original pleading; such claims would not "relate back".

Although amendments pertaining to new transactions are permitted, those which pertain to the original claims are more likely to be granted. Appellate decisions permitting amendments have emphasized that the moving parties in those cases were merely seeking to assert a new legal theory based upon the same circumstances set forth in the original pleading. *See, e.g., Foman v. Davis, supra* at 182 ("[T]he amendment would have done no more than state an alternative theory for recovery. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Caruso*, at 350–51 (original

complaint claimed tortious business interference based on defamatory publications, and amended complaint raised claim in defamation based on same publications; "petitioner had notice of a possible issue of defamation at the time of the original complaint", and thus was not prejudiced in preparing his defense, contacting witnesses, and otherwise securing evidence); *Adams v. Allstate Ins. Co.*, 58 Wn.2d 659, 364 P.2d 804 (1961); *Estate of Randmel v. Pounds,* 38 Wn. App. 401, 685 P.2d 638 (1984); *Tagliani v. Colwell, supra. See generally* 6 C. Wright & A. Miller § 1487, at 430 nn.50, 51 and cases cited therein. For a discussion of the general tendency to deny motions to amend based on new facts or occurrences, see 61A Am. Jur. 2d *Pleading* §§ 322, 324, 328 (1981).

The judicial preference for those amendments based on the underlying circumstances set forth in the original complaint—as compared with amendments raising new claims based on new factual issues—is consistent with the policies behind CR 15. When an amended complaint pertains to the same facts alleged in the original pleading, denying leave to amend may hamper a decision on the merits. When the amended complaint raises entirely new concerns, the plaintiff's right to relief based on the facts in the original complaint is unaffected. Moreover, the defendant in the latter case is more likely to suffer prejudice because he has not been provided with notice of the circumstances giving rise to the new claim and may have to renew discovery.

In the instant case, the amended complaint asserted new causes of action in defamation growing out of distinct and separate publications. The subject matter of the new publications was not the same as the subject matter of the publications giving rise to the original complaint, so the truth or falsity of the first set of publications would shed no light on the truth or falsity of the second set.

The plaintiffs nevertheless maintain that the second set of publications goes to the issue of malice raised in the original complaint. However, the amended complaint goes further than offering the publications as evidence and adds

entirely new claims. Moreover, the trial judge granted the plaintiffs a continuance to lengthen the time for discovery, and he refused to limit the subject matter of discovery to only those publications discussed in the original complaint: the judge expressly permitted the plaintiffs to depose the person they had attempted to join as a defendant in the amended complaint. The plaintiffs thus suffered no prejudice in obtaining evidence bearing on the issue of malice raised in the original complaint and were not precluded from a determination of the original claims on the merits. *Cf. Foman v. Davis, supra* at 182.

The trial judge was concerned with unfair surprise and prejudice to the defendants, for in denying the plaintiffs' motion, the judge noted that the lawsuit had "been pending for a substantial period of time." He also observed that granting the motion would "in effect . . . broaden the issues". The original complaint, although raising over a half dozen counts of defamation, "involved one episode over a relatively limited period of time." If the motion had been granted, the defendants would have had to contact an entire new set of witnesses and begun new efforts to secure evidence. Thus, we see no abuse of discretion in the trial court's decision.

We note that one of the additional causes of action in the amended complaint derived from an article published after the original complaint had been filed. Changes in pleadings designed to add facts occurring after the filing of the original complaint technically should be made pursuant to CR 15(d), in a motion to serve a supplemental pleading, not pursuant to CR 15(a), the rule for amended pleadings. 6 C. Wright & A. Miller, *Federal Practice* § 1473 (1971). However, in light of the general policy behind notice pleadings, *see Pierce Cy. Sheriff v. Civil Serv. Comm'n,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983) ("the central purpose of our pleading rules is to provide adequate notice"); 6 C. Wright & A. Miller § 1471, mischaracterization of a supplemental pleading as an amended pleading generally should not affect the disposition of the motion. 6 C. Wright & A.

Miller § 1473. The standard of review for denial of a motion to supplement pleadings, like that for denial of a motion to amend, is "abuse of discretion". 6 C. Wright & A. Miller § 1504.

We note that CR 15(d) contains no injunction to the trial judge that leave to supplement be "freely given". *See* CR 15(a). The rule provides in part that

the court may, upon reasonable notice and upon such terms as are just, permit [a party] to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

CR 15(d). Courts have been uneven in their treatment of supplemental pleadings raising entirely new causes of action, some permitting the supplements, others denying them. 6 C. Wright & A. Miller § 1506; *see generally* 61A Am. Jur. 2d *Pleading* § 292 (1981). Prejudice to the opposing party again is grounds for denial. *See, e.g., Montgomery Envtl. Coalition v. Fri,* 366 F. Supp. 261 (D.D.C. 1973). As with the denial of leave to amend, we see no abuse of discretion in the denial of leave to file supplemental pleadings.

## ACTUAL MALICE

The standard of review on appeal of a summary judgment order is de novo, with the reviewing court performing the same inquiry as the trial court. *See Del Guzzi Constr. Co. v. Global Northwest Ltd.,* 105 Wn.2d 878, 882, 719 P.2d 120 (1986); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Evidence not presented before the trial court is not considered on appeal. *See Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 390, 715 P.2d 1133 (1986).

When a defamation claim is brought by a public official regarding statements made about the official's performance of his public duties, the plaintiff must prove that the statements were made with actual malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). The burden of proof for the element of actual malice is "clear and con-

vincing evidence", not the less stringent "preponderance of the evidence" burden ordinarily required in civil suits. *New York Times,* at 285–86. This heavier burden is imposed at the summary judgment stage as well as at trial; to survive a defendant's summary judgment motion for dismissal, the plaintiff must offer evidence sufficient to permit a reasonable trier of fact to find clear and convincing proof of actual malice. *Anderson v. Liberty Lobby, Inc.,* __ U.S. __, 91 L. Ed. 2d 202, 215, 106 S. Ct. 2505 (1986). As with other summary judgment motions, the nonmoving party is entitled to have the evidence viewed in a light most favorable to him and against the moving party. *Liberty Lobby,* 91 L. Ed. 2d at 216. However, if the plaintiff, as nonmoving party, can only offer a "scintilla" of evidence, evidence that is "merely colorable", or evidence that "is not significantly probative", the plaintiff will not defeat the motion. *See Liberty Lobby,* 91 L. Ed. 2d at 212; *cf. Rye v. Seattle Times Co.,* 37 Wn. App. 45, 56, 678 P.2d 1282, *cert. denied,* 469 U.S. 1087 (1984). Moreover, conclusory statements in a plaintiff's affidavit are insufficient; the plaintiff must demonstrate the basis for his assertions. *Mansfield v. Holcomb,* 5 Wn. App. 881, 886–87, 491 P.2d 672 (1971). The inquiry before this court, then, is whether, in viewing all the evidence in a light most favorable to the Herrons, a reasonable trier of fact could find clear and convincing proof that the defendants published their articles with actual malice.[3]

 It is by now well established that the "actual malice" element of public figure defamation claims is not ill will or spite but rather the publisher's knowledge that his statements are false or his reckless disregard for their falsity. *Old Dominion Branch 496, Nat'l Ass'n of Letter Carriers v. Austin,* 418 U.S. 264, 281, 41 L. Ed. 2d 745, 94 S. Ct. 2770 (1974); *Garrison v. Louisiana,* 379 U.S. 64, 73–74, 77–78, 13 L. Ed. 2d 125, 85 S. Ct. 209 (1964); *New York Times,* 376 U.S. at 279–80; *Mansfield v. Holcomb,* 5 Wn. App. at 884–

---

[3]Other issues in defamation, such as falsity or whether the statements were opinion rather than assertions of fact, are not argued in this appeal.

85. The purpose behind this imposing plaintiff's hurdle is the protection of First Amendment rights and values.

> For speech concerning public affairs is more than self–expression; it is the essence of self–government. The First and Fourteenth Amendments embody our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide–open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."

*Garrison,* at 74–75 (quoting *New York Times Co. v. Sullivan, supra*); *see Mills v. Alabama,* 384 U.S. 214, 218–19, 16 L. Ed. 2d 484, 86 S. Ct. 1434 (1966). The actual malice standard serves the First Amendment in part by shielding the right to criticize public figures from restrictions based on the speaker's motive.

The actual malice element is not proved by showing that the publisher failed to investigate the basis for his statements or that a more prudent person would have refrained from such publications; the public figure plaintiff must show that the publisher did *"in fact* [entertain] serious doubts as to the truth of his publication." (Italics ours.) *St. Amant v. Thompson,* 390 U.S. 727, 731, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968). The fact that prior to publication the plaintiff denied the defamatory allegations does not in itself demonstrate "serious doubts". *Edwards v. National Audubon Soc'y, Inc.,* 556 F.2d 113, 121 (2d Cir.), *cert. denied sub nom. Edwards v. New York Times Co.,* 434 U.S. 1002 (1977). The standard is a subjective one. *See St. Amant v. Thompson, supra; see also Schiavone Constr. Co. v. Time, Inc.,* 619 F. Supp. 684, 707 (D.N.J. 1985). Thus, the public figure's critics have no affirmative duty to search out the truth or to substantiate their statements, nor are they required to corroborate their sources' information. The only limitation on free expression is liability imposed for false and damaging statements made with actual knowledge of or in reckless disregard of their falsity. *See Garrison,* at 79.

Although the burden on the public official defamation plaintiff is substantial, it is not insurmountable, even when the defendant testifies that he believed the substance of his publication to be true.

> Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination . . . is based wholly on an unverified anonymous telephone call . . . [or] when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

*St. Amant,* at 732. In addition, "recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant,* at 732; *Herbert v. Lando,* 441 U.S. 153, 156–57, 60 L. Ed. 2d 115, 99 S. Ct. 1635 (1979). Moreover, although negligence, a failure to investigate, anger or hostility toward the plaintiff, or reliance on sources known to be unreliable would each alone be insufficient proof, when viewed cumulatively and in appropriate circumstances they may establish a clear and convincing inference of actual malice. *See Goldwater v. Ginzburg,* 414 F.2d 324, 342 (2d Cir. 1969), *cert. denied,* 396 U.S. 1049 (1970); *Reader's Digest Ass'n v. Superior Court,* 37 Cal. 3d 244, 257–58, 690 P.2d 610, 208 Cal. Rptr. 137 (1984), *cert. denied sub nom. Synanon Church v. Reader's Digest Ass'n,* 106 S. Ct. 3307 (1986).

In examining the record for actual malice, we note at the outset that defendant Sypher admitted that Lopp was not "always reliable as a source of information". Comparing Lopp to another one of the reporter's sources or informants, Sypher stated that Lopp did not "have [as] much credibility." Sypher and the Tribune do not deny the claim that they made no independent investigation of the charges in Lopp's recall petition. Nor does either defendant dispute the Herrons' assertion that the defendants wanted Don Herron removed from office. At the same time, Sypher has stated in an affidavit that he "was aware of no facts or circumstances which would have led [him] to believe that the

charges filed by Mr. Lopp contained any false statements of fact" about Don Herron.[4]

### The George Dutcher Sentencing

One of the defamatory allegations the Tribune published was that Don Herron's office acted incompetently at the sentencing hearing of George Dutcher. Dutcher had been prosecuted in Pierce County for manufacturing illegal drugs. Lopp charged in his petition, and the defendants reported the charge, that although Dutcher's manufacturing operation was extensive, the prosecutor's office failed to inform the sentencing judge of that fact, with the consequence that the judge imposed only a 60–day jail term on Dutcher. Sypher's article stated that "Herron's failure to prosecute with 'vigor and zeal undermines the credibility of his office,' the [recall] petition contends." Tribune, Aug. 17, 1979, at 1 (market final ed.). In addition to describing the contents of the petition, the article observed that Lopp's charges "echoed police statements that Dutcher had operated one of the largest illegal drug laboratories in Pierce or King counties." Tribune, *supra*.

The plaintiffs argue that the judge had been fully informed of Dutcher's drug manufacturing operations and Sypher knew the judge had been informed. The evidence offered of Sypher's knowledge was Don Herron's sworn statement that the transcript of the sentencing hearing confirms the judge had been informed at the hearing; Herron additionally stated in his affidavit that Sypher was present at the hearing. The defendants concede the fact of Sypher's presence, and they point to no evidence in the record refuting the assertion that the judge was informed at that hearing of Dutcher's activities.

Although Sypher states in his affidavit that he "was aware of no facts or circumstances which would have led

---

[4]Both sides in this dispute have referred to evidence they included in the appendices of their briefs but without citing to the record. On appeal of a summary judgment order we cannot consider evidence not before the trial court. *See Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 715 P.2d 1133 (1986).

[him] to believe that the charges filed by Mr. Lopp contained any false statements", see Respondents' Clerk's Papers, at 3, we believe a reasonable trier of fact upon hearing all the testimony could find that the petition allegation about the Dutcher sentencing was false and Sypher knew the allegation was false. *See St. Amant,* at 732 (professions of good faith not fatal to proof of actual malice). Thus, we hold that the plaintiffs met their summary judgment burden in this instance.

We note that the plaintiffs also take issue with the statement in the article that Lopp's charges "echoed police statements that Dutcher had operated one of the largest illegal drug laboratories in Pierce or King counties." The plaintiffs contend that the statement suggests to the ordinary reader that Herron intentionally concealed Dutcher's activities from the sentencing judge and that Herron conspired with Dutcher in the manufacture of drugs. The plaintiffs further maintain that the statement suggests that the police "were upset with the prosecuting attorney." Brief of Appellants, at 7. We decline to accept such a strained interpretation of the challenged statement; we believe the article merely suggests that Lopp's petition contained statements similar to police statements about the relative size of Dutcher's drug operations. We do not see how the ordinary reader could infer any accusation of intentional wrongdoing—much less criminal conspiracy—against Herron.

### The Caliguri Assault Charge

The second alleged defamatory statement discussed on appeal is the Tribune's report of the recall petition charge that Herron, "in reducing and later agreeing to dismiss an assault charge involving racketeer Richard F. Caliguri, [was] guilty of 'deliberate and extreme abuse' of prosecutorial discretion." Tribune, Aug. 17, 1979, at 1 (market final ed.); *see also* Tribune, Aug. 25, 1979, at 1 (final ed.). Although plaintiffs argue in their brief that the prosecutor had not dismissed the assault charge and that Sypher was

aware of that fact, they fail to cite to any particular evidence in the record to support their argument.[5] Absent clear and convincing evidence that Sypher either knew Lopp's charge was false or recklessly disregarded the charge's falsity, we cannot conclude that a reasonable trier of fact could infer actual malice.

## The Lopp Prosecution

The plaintiffs claim that Lopp made the defamatory charge, which the defendants republished, that Don Herron had "[used] his office to harass Lopp by continuing to pursue a possession of stolen property charge against [Lopp] which eventually was dismissed." See Appellants' Clerk's Papers, at 18. The plaintiffs offer as evidence of actual malice Don Herron's affidavit that asserts the following: (1) Lopp was arrested in 1978 for theft of state property; (2) Lopp was convicted of the charge; and (3) Lopp admitted to a Tribune reporter he had taken the property. The Tribune story quotes Herron as stating that Lopp's conviction eventually was reversed on a technicality, a fact that the plaintiffs have not disputed.

The problem with the plaintiffs' argument is, first of all, that they have failed to present any evidence that the decision to prosecute Lopp was made for reasons other than harassment. The fact that Lopp committed the theft does not disprove harassment or abuse of prosecutorial discretion if the decision to prosecute was made on unjustifiable grounds. *See State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984). In addition, even if we were to presume the prosecution was properly pursued, we have been offered no evidence that the defendants were aware of the falsity of the harassment claim or recklessly disregarded its falsity. Again, the plaintiffs have failed to make out the prima facie showing of actual malice required to survive the summary judgment motion.

---

[5]The plaintiffs cite generally to 88 pages of Clerk's Papers. See Brief of Appellants, at 7.

### Imputation of Criminal Activity

The plaintiffs contend that several of the Tribune articles, and in particular the headline "Herron disqualification asked", impute improper and even criminal activity to Don Herron. The plaintiffs cite *Tilton v. Cowles Pub'g Co.,* 76 Wn.2d 707, 724, 459 P.2d 8 (1969), *cert. denied,* 399 U.S. 927 (1970) to support their contention. In *Tilton,* an article under the headline "23 Named in Charges of Illegal Fund Use" stated that the proceeding against the 23 defendants was brought by police officials. The proceeding in fact was civil and not criminal. We held, however, that a reasonable jury could find that the article reported a criminal indictment, for persons not specially trained in the law reasonably could infer that charges brought by police officials are criminal in nature. *Tilton,* at 723–24.

We disagree that the article in this case imputes criminal activity to the plaintiff in a manner analogous to that in *Tilton.* The article headlined "Herron disqualification asked" reports on the Pierce County Commissioner's demand that Herron disqualify himself from deciding whether the petition charges could justify recall. The article makes it plain that the Commissioner urged disqualification based on a conflict of interest in Herron deciding the issue when Herron himself was the subject of the recall. There is no indication in the article that the Commissioner urged disqualification because he believed the charges were true.

The plaintiffs have asserted that a number of the other articles cited in the complaint impute criminal conduct to Herron. However, the plaintiffs in their brief on appeal fail to identify the particular statements they believe to be defamatory or to cite to the record with any specificity. *See* RAP 10.3(a)(4), (5). The court thus is in no position to conclude that the plaintiffs have produced clear and convincing evidence of actual malice or have made out a prima facie case of defamation.

### RECALL PETITION PRIVILEGE

We concluded above that, based on the evidence before

the trial court regarding the Dutcher incident, a reasonable trier of fact could find clear and convincing proof of actual malice. The plaintiffs offered sufficient evidence that the defendants were aware the sentencing judge in the Dutcher case had been informed of Dutcher's drug manufacturing activities and that the defendants nevertheless republished Lopp's allegation that the judge had not been informed. The defendants argue, however, that because the defamatory allegation consists entirely of a report of a charge contained in a public document, the report should be privileged and the defendants immune from liability.

The law has recognized the defense of privilege in defamation law because in certain circumstances society is better served by permitting defamatory speech than by compensating those injured by it. *See* Restatement (Second) of Torts, Introductory Note, at 242 (1977); W. Prosser, *Torts* § 109 (3d ed. 1964). Privileges are generally classified either as absolute or conditional. Restatement, at 242; W. Prosser, *supra.* The absolute privilege has been recognized in only a few situations, when public policy supports giving the speaker almost complete freedom of expression regardless of his motive. W. Prosser, *supra*; Restatement, at 242. Members of legislative bodies, executive officers, the parties, witnesses, lawyers, judges, and jurors in court proceedings, each are clothed with absolute immunity for any defamatory statements made in the course of official proceedings, provided the statements pertain to the subject matter of the proceedings. Restatement, at 242; W. Prosser, *supra.* Conditional or qualified privileges, as their name implies, are narrower in scope than absolute privileges, and the speaker's purpose and manner of publication may be relevant to the exercise of the privilege. W. Prosser § 110; *see* Restatement § 592A, Topic 3.

The absolute privilege, while broad in scope, has been applied sparingly. "Absolute privilege is usually confined to cases in which the public service and administration of justice require complete immunity." *Bender v. Seattle,* 99 Wn.2d 582, 600, 664 P.2d 492 (1983); *Twelker v. Shannon*

*& Wilson, Inc.,* 88 Wn.2d 473, 476, 564 P.2d 1131 (1977).
The privilege ordinarily applies only to statements made *in
the course* of official proceedings, and not to statements
made *about* such proceedings. *See Twelker,* at 475–76.

> The reason . . . for granting absolute immunity is not
> free speech or public welfare alone. . . . [T]he scope of
> absolute privilege has traditionally been limited to situa-
> tions in which authorities have the power to discipline as
> well as strike from the record statements which exceed
> the bounds of permissible conduct.

*Twelker,* at 476. For example, the judiciary has the sanc-
tions of perjury and contempt to deter wanton defamation
in judicial proceedings; legislatures have their own forms of
sanctions for dealing with improper conduct. *See Twelker,*
at 476–77.

The Tribune article was not published in the course of
any official proceeding. In addition, the newspaper was
under no official duty to report the petition's contents—in
contrast to the duty of the witness and judge in the court-
room, the representative in the legislature. Thus, in the
absence of any authority suggesting otherwise, we decline to
recognize an absolute privilege to report the contents of a
recall petition. The question remains, however, whether any
of the purposes underlying the recognition of conditional
privileges militate in favor of a conditional privilege to
report a recall petition's contents.

As a general rule, a person who republishes defamatory
statements made by another does not escape liability for
the defamation even though the republisher is careful to
ascribe the statements to the original speaker.[6] Restate-
ment § 578; *see* Note, *The Developing Privilege of Neutral
Reportage,* 69 Va. L. Rev. 853, 853 (1983); *but see Edwards*

---

[6]Although the modern trend may be toward abandoning the general rule, *see*
Note, *The Developing Privilege of Neutral Reportage,* 69 Va. L. Rev. 853 (1983),
none of the parties in this case have asked the court to reconsider the rule, and
thus we will not do so here. *But cf. Edwards v. National Audubon Soc'y, Inc.,* 556
F.2d 113 (2d Cir.), *cert. denied sub nom. Edwards v. New York Times Co.,* 434
U.S. 1002 (1977).

*v. National Audubon Soc'y, Inc.*, 556 F.2d 113 (2d Cir.), *cert. denied sub nom. Edwards v. New York Times Co.*, 434 U.S. 1002 (1977). States in general and Washington in particular have carved out an exception to this rule and recognized a conditional privilege protecting the republisher when the defamatory statement originally was made in the course of an official proceeding or contained in an official report. *Mark v. Seattle Times*, 96 Wn.2d 473, 487–88, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982); *see also* Note, *supra*; Restatement § 611. The purpose of such a privilege is to serve the public's interest "in having information made available to it as to what occurs in official proceedings and public meetings." Restatement § 611, comment *a*. The privilege requires that the republication constitute an "accurate and complete or a fair abridgement of the occurrence reported." *Mark v. Seattle Times*, at 487 (quoting Restatement § 611). "The privilege permits the media to publish . . . reports of any official action or proceeding or of a public meeting that deals with a matter of public concern." *Moloney v. Tribune Pub'g Co.*, 26 Wn. App. 357, 361, 613 P.2d 1179, *review denied*, 94 Wn.2d 1014 (1980), *disapproved of on other grounds in Bender v. Seattle*, 99 Wn.2d 582, 590, 664 P.2d 492 (1983). The privilege has been applied not only to statements made in the course of the proceeding but also to documents filed and available for public inspection. *Seattle Times*, at 488. The privilege extends to civil as well as criminal proceedings. *See Mark v. Seattle Times, supra; Moloney v. Tribune Pub'g Co., supra.*

We are aware of no recent decisions in which courts have recognized a conditional privilege to report the contents of a recall petition, although courts now and in the past have grappled with related recall petition issues. *See, e.g., Concerned Members of Intermountain Rural Elec. Ass'n v. District Court*, 713 P.2d 923 (Colo. 1986); *State v. Wilson*, 137 Wash. 125, 241 P. 970, 43 A.L.R. 1263 (1925); *Kramer v. Ferguson*, 230 Cal. App. 2d 237, 41 Cal. Rptr. 61 (1964); *Gunsul v. Ray*, 6 Cal. App. 2d 528, 45 P.2d 248 (1935). We

believe, however, that the nature of the recall process provides the basis for recognition of a conditional privilege.

The process by which the public recalls its government officials from elected office is rooted in our state constitution and is a matter of the strongest public interest. *See Janovich v. Herron,* 91 Wn.2d 767, 770, 592 P.2d 1096 (1979) (lead opinion). The process contemplates the general publication of charges that are filed against an official and a vote by the electorate on the charges. *See* RCW 29.82; Const. art. 1, §§ 33, 34. Although the question of the falsity of recall charges arguably may be the subject of an ordinary defamation lawsuit decided in a court of law,[7] the decision of whether to remove an official from office based on the charges is exclusively the province of the electorate, once the charges have been deemed legally sufficient. *See Janovich,* at 773–74. With respect to the recall election, the public is the arbiter of truth. *See Janovich v. Herron, supra; see also Cole v. Webster,* 103 Wn.2d 280, 287, 692 P.2d 799 (1984).

The public, however, cannot exercise its role of arbiter if it is inhibited from communicating the nature of recall charges. The mere specter of liability may inhibit the discussion of petitions, particularly when the public is uncertain about a petition's accuracy. Thus, a court's judgment or potential judgment that recall charges are false would effectively thwart the public's power to decide falsity. The right to free expression is not the only right being chilled; the constitutional right of recall is also chilled.

We recognize that attempting to recall an official from office is not unlike opposing a person's election to office in the first instance. Reporting the contents of a recall petition thus is in some ways similar to reporting the contents of campaign literature. However, we have never recognized

---

[7]We do not decide here whether the original author—in this case Lopp—has any privilege to publish defamatory statements within the recall petition. *See, e.g., Concerned Members of Intermountain Rural Elec. Ass'n v. District Court,* 713 P.2d 923, 924 (Colo. 1986); *State v. Wilson,* 137 Wash. 125, 241 P. 970, 43 A.L.R. 1263 (1925).

a conditional privilege to republish defamatory campaign statements, even though the right to elect officials is no less rooted in the constitution than the right to recall those officials. Therefore, recognition of a conditional privilege in the recall context must be based on something more than the fact that an election is at issue. We believe that the "something more" lies in several differences between recall petitions and ordinary campaign literature.

The first difference is that a recall petition is a filed public document expressly authorized by statute. *See* RCW 29.82. Secondly, the Washington Legislature has required that persons who submit recall petitions state under oath that they believe the charges to be true and have knowledge of the facts underlying the charges. *See* RCW 29.82-.010. No analogous statutory authority or limitation exists for campaign statements.

But, most importantly, the filing of a recall petition sets in motion a chain of statutorily mandated procedures, *see* RCW 29.82, which, if reported on, would be protected by the public proceedings conditional privilege. *See Mark v. Seattle Times,* 96 Wn.2d 473, 487, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). Under both the statutory recall procedures in place at the time this action arose and the procedures currently in place, the recall process is initiated by the filing of a recall petition with the appropriate state or county official. *See* Laws of 1984, ch. 170, §§ 2–3. The government reviews the petition charges, with the appropriate official summarizing them in a ballot synopsis and the government determining that the charges are legally sufficient. *See* Laws of 1984, ch. 170. To be legally sufficient, the charges must allege facts constituting malfeasance, misfeasance, or violation of the oath of office. *Greco v. Parsons,* 105 Wn.2d 669, 671, 717 P.2d 1368 (1986); RCW 29.82.010. If the charges are held to be legally insufficient, the petition is dismissed; only if the charges are held to be sufficient are they put before the electorate for a vote. *See Greco v. Parsons, supra;* RCW 29.82.023.

The government thus is no minor player in the recall

process; it has the power to terminate the process. It is this government entanglement in the recall election that distinguishes recall petition charges from ordinary campaign publications and militates in favor of recognizing a conditional or qualified privilege to report petition contents. The public has a commanding interest in knowing about proceedings in which the government may check the electorate's constitutional powers.

We hold, therefore, that a privilege exists to report defamatory charges in a recall petition. The privilege is qualified by the requirements that (1) the report be a fair and accurate summary or abridgment of the charges; (2) the republisher ascribe the charges to the petition; and (3) the republisher not use the report to concur in the charges. *Cf. Edwards v. National Audubon Soc'y, Inc.*, 556 F.2d 113, 120 (2d Cir.) (recognizing privilege to report newsworthy defamatory charges not part of any legal proceeding, provided republisher does not espouse or concur in charges), *cert. denied sub nom. Edwards v. New York Times Co.*, 434 U.S. 1002 (1977).

The plaintiffs make no claim either that the defendants' description of Lopp's petition was in any way inaccurate or unfair or that the defendants failed to make clear that the petition charges were Lopp's and not the Tribune's. The plaintiffs do claim, however, that a conditional privilege to republish the defamatory statements of another is defeated by a showing that the republisher was motivated by malice or a desire to harm the defamed person. *See Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 97 (3d Cir. 1984). The plaintiffs assert that they have offered sufficient proof the defendants wanted Don Herron removed from office. This desire to harm Herron, the plaintiffs claim, translates into abuse of a conditional privilege and provides no defense to the defamation.

This court has held, in defamation cases involving private figure plaintiffs, that a conditional privilege will not protect against liability unless the defamatory statements are published "after a fair and impartial investigation or

upon reasonable grounds for belief". *Turngren v. King Cy.,* 104 Wn.2d 293, 310, 705 P.2d 258 (1985); *see Twelker v. Shannon & Wilson, Inc.,* 88 Wn.2d 473, 478, 564 P.2d 1131 (1977); *see also Mark v. Seattle Times,* 96 Wn.2d at 492; *Gem Trading Co. v. Cudahy Corp.,* 92 Wn.2d 956, 960, 603 P.2d 828 (1979). We have also held that a showing of actual malice will defeat a conditional or qualified privilege. *See Bender v. Seattle,* 99 Wn.2d 582, 601–02, 664 P.2d 492 (1983). Other states have allowed a showing of ill will or spite to defeat a conditional privilege. *See generally* 50 Am. Jur. 2d *Libel and Slander* § 256 n.7; Annot., 20 A.L.R.4th 576, 581 n.16 (1983). At the same time, some authorities have rejected this approach and have held that the subjective feelings of the republisher are irrelevant to the proper exercise of a conditional privilege. *See* Restatement (Second) of Torts § 611, comment *a* (1977); 50 Am. Jur. 2d § 256. *See generally* Annot., 20 A.L.R.4th 576, 581 n.16 (1983).

It makes little sense—in the public–figure context—to find abuse of a conditional privilege in a showing of actual malice, a failure to investigate, or the absence of reasonable grounds to believe the defamatory statements. The need to assert a privilege does not arise until actual malice has been proved. If the plaintiff already has established that the republisher either knew or suspected that the allegations were false, we cannot expect the republisher to show that he nevertheless undertook an investigation of the false allegations or that he had a reasonable basis for believing them.

More importantly, we must remember that the purpose behind recognizing a conditional privilege of this type is to allow the public to learn of newsworthy allegations made in the course of an official proceeding even when the allegations are false. The republisher's knowledge of falsity is irrelevant to newsworthiness. In the same vein, ill will or malice should not destroy the privilege. The public's interest in having the charges brought to its attention is in no way diminished by the republisher's personal feelings about

the plaintiff. And, as we noted above, the privilege is not a free license to engage in wanton defamation; the republisher remains constrained by the three requirements of fair and accurate reporting, ascribing authorship, and nonconcurrence.

Finally, the plaintiffs argue that even if the fair and accurate reporting of the defamatory contents of a recall petition is privileged, the privilege would not apply in this case because the Tribune article was published prior to any official action. The plaintiffs contend that preliminary filings generally are not within the scope of official proceedings republication privileges.[8] The defendants acknowledge that the petition had merely been filed at the time their article was published and no official review of the charges had yet occurred. The question thus is raised: at what stage in the recall process does the privilege arise?

Other states recognizing a privilege to report on official proceedings have disagreed over when in the initiation of legal proceedings the privilege can be invoked. Some states hold that no privilege attaches to a republication until the government has officially and affirmatively acted; thus, the report of defamatory statements made in preliminary filings such as pleadings is not protected. *See generally* Annot., 20 A.L.R.4th 576 (1983). The Restatement favors this approach. *See* Restatement (Second) of Torts § 611, comment *e* (1977). One purpose behind excluding preliminary ex parte filings from the protection of the privilege is that the public interest in the workings of the government is not triggered until the government takes some action. The Restatement's concern, however, appears to be with preventing the would–be defamer from filing defamatory pleadings only in order to privilege their republication. *See*

---

[8]The plaintiffs argue that the Tribune article at issue actually appeared prior even to the *filing* of the recall petition, and thus the article could not be protected by any official proceedings privilege. However, the plaintiffs offered no evidence of when the Tribune article was distributed to the public. The plaintiff has the burden of proof that publication has occurred. *See Mark v. Seattle Times,* 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982).

Restatement § 611, comment *e.*

The Washington Court of Appeals has rejected the Restatement approach and has recognized a conditional privilege with respect to pleadings. *O'Brien v. Tribune Pub'g Co.,* 7 Wn. App. 107, 117, 499 P.2d 24 (1972), *cert. denied sub nom. O'Brien v. Franich,* 411 U.S. 906 (1973). In the criminal context, this court has allowed the privilege to attach to police investigative reports. *E.g., Moloney v. Tribune Pub'g Co.,* 26 Wn. App. 357, 361, 613 P.2d 1179, *review denied,* 94 Wn.2d 1014 (1980), *disapproved of on other grounds in Bender v. Seattle,* 99 Wn.2d 582, 664 P.2d 492 (1983). We also have permitted the privilege to attach to a probable cause affidavit. *Mark v. Seattle Times,* 96 Wn.2d 473, 488, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). We noted in *Seattle Times* that the affidavit was "(1) instrumental in the commencement of a criminal prosecution, (2) [a matter] of public record, and (3) verified by the prosecutor." *Seattle Times,* at 488. Admittedly, though, with both investigative reports and probable cause affidavits official action has occurred, either in the form of police documentation or the prosecutor's verification.

We noted above that under the current recall statute, official review of a petition begins with the ballot synopsis, followed by a sufficiency determination. Under the statutory scheme in place at the time this action arose, these two steps were performed in the reverse order; and the sufficiency determination was made by the officer with whom the petition was filed. *See* RCW 29.82.020, repealed by Laws of 1984, ch. 170, § 13. Under both schemes, however, the initial act of filing the petition principally involves the government as a clerical actor only.

Nevertheless, we believe several factors distinguish recall petitions from other types of official documents and favor the privilege arising with the initial filing. First, the allegations are directed at public officials, not at private citizens. First Amendment interests dictate wide latitude in the criticism of public officials. *New York Times Co. v. Sulli-*

*van,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). Secondly, as we discussed above, the public has a strong interest in the government's handling of the petition. The Legislature has recognized no interests that would permit closing recall petition proceedings or sealing recall documents. With no statutory bar on learning the contents of petitions or the substance of recall proceedings, the public is likely to hear of the petition sooner or later. If the conditional privilege will protect the later publication of the charges, we see no reason not to privilege the earlier publication.

In addition, with public officials subject to recall we are dealing with persons who have intentionally injected themselves into the public eye. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). The privacy interests that may be at stake in ordinary civil proceedings are not at stake in recall proceedings to the same extent. *See, e.g., Time, Inc. v. Firestone,* 424 U.S. 448, 47 L. Ed. 2d 154, 96 S. Ct. 958 (1976); *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984). *Cf. In re Rosier,* 105 Wn.2d 606, 717 P.2d 1353 (1986). This is not to say that public officials give up all privacy rights. However, where—as here—the filed recall petition charge pertains to the plaintiff's conduct in his capacity as an elected official, we see no countervailing privacy concerns to warrant limiting the right to republish the charge.

Yet another reason compels us to the same result. Under the recall statute in force when this action arose, the next procedural step after the filing of the petition was a determination of the legal sufficiency of the charges. At that time the prosecuting attorney, Don Herron, was the official responsible for the sufficiency determination. A number of the challenged articles contained statements by other county officials declaring that Herron should disqualify himself from passing on the legal sufficiency of a petition aimed at his own recall. For several days after the petition was filed Herron did not disqualify himself, presumably

because the law was unclear on the way the sufficiency determination should be handled. Regardless of the reasonableness of Herron's actions, the odd posture of the petition was clearly a matter of important public interest. The press was certainly entitled to inform the public that a recall petition had been filed against Herron and Herron had not yet disqualified himself from passing judgment on it. For the Tribune to make such a report yet omit the petition's allegations would not serve the public's interest in fully understanding the troublesome situation. Inaction by a government official in this and similar circumstances can be as newsworthy as action. The critical element is the public interest, not whether a government actor has taken a particular affirmative step.

For these reasons we hold that the conditional privilege arises at the time the recall petition is filed. In so doing we are not unmindful of the fact that the press wields considerable power in both the election and recall of public officials. We would like to think that the press would only use its power responsibly; but even when it does not, as long as it stays within the scope of the privilege, the courts will not interfere.

We do not believe that recognition of a conditional privilege to report the contents of filed recall petitions will create a great incentive for filing frivolous and defamatory petitions. As we noted above in footnote 6, Ronald Lopp was not a party to this case, and we make no decision here on whether an original petition would be covered by any privilege in a defamation action. In addition, the Legislature has made some efforts to preclude the filing of frivolous petitions by requiring that persons submitting recall petitions state under oath that they believe the charges to be true and they have knowledge of the underlying facts. *See* RCW 29.82.010.

## CONCLUSION

We hold that the trial court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint.

188

We also hold that, with one exception, the plaintiffs failed to offer clear and convincing evidence of actual malice to survive the defendants' motion for summary judgment. In the one publication where the plaintiffs raised a triable issue of actual malice, we hold that the publication is privileged. Thus, we affirm the trial court's dismissal of this action.

UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.
DORE, J., concurs in the result.