1. The Fair Report Privilege [6]
¶ 13 Washington recognizes the fair report privilege-a conditional privilege that protects a republisher of a statement "when the original defamatory statement was made in the course of an official public proceeding or contained in an official public record." Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 179, 736 P.2d 249 (1987). The purpose of the fair report privilege "is to serve the public's interest 'in having information made available to it as to what occurs in official proceedings and public meetings.' " Herron, 108 Wash.2d at 179, 736 P.2d 249 (quoting RESTATEMENT (SECOND) OF TORTS § 611 ). The fair report privilege extends to both civil and criminal judicial proceedings. Herron, 108 Wash.2d at 179, 736 P.2d 249"Because the filing of a pleading is a public and official act in the course of judicial proceedings, the fair reporting privilege attaches to pleadings even if the court has yet to action them." Clapp v. Olympic View Publ'g Co., 137 Wash. App. 470, 476, 154 P.3d 230 (2007). See also WASH. CONST. art. I, § 10 ("Justice in all cases shall be administered openly, and without unnecessary delay.").
¶ 14 The fair report privilege protects the reporting of official proceedings if (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgement. Clapp, 137 Wash. App. at 477, 154 P.3d 230. See also Herron, 108 Wash.2d at 179, 736 P.2d 249 ; Mark, 96 Wash.2d at 487, 635 P.2d 1081 ; Alpine, 114 Wash. App. at 383, 57 P.3d 1178 ; (all quoting RESTATEMENT (SECOND) OF TORTS § 611 ).
2. Application to SKW's Webpages
¶ 15 McNamara contends first that SKW cannot invoke the fair report privilege because it only applies to members of the news media. We disagree.
¶ 16 Washington courts have not expressly decided whether the fair report privilege is applicable to parties other than traditional news media. However, as we discuss above, Washington has long recognized a strong public interest in having access to public proceedings, including a constitutional mandate for the open administration of justice. As such, neither the type of media nor entity republishing reports of official public *12 proceedings is relevant to determining whether the fair report privilege applies. We hold that the fair report privilege applies to news media and other types of media, including websites, webpages, and blogs, reporting on official public proceedings, including judicial proceedings, so long as (1) the report is attributable to an official proceeding and (2) the report is an accurate or a fair abridgement of the official report.[7]
¶ 17 McNamara argues next that SKW may not invoke the fair report privilege because SKW's website and webpages are not an accurate or fair abridgment of plaintiff's complaint in the wrongful death action against McNamara. We disagree.
¶ 18 "For a report to be a fair abridgment of an official proceeding, surgical precision is not required so long as the report is substantially accurate and fair." Alpine, 114 Wash. App. at 386, 57 P.3d 1178. "In the summary judgment context, the plaintiff will not overcome the fair reporting privilege if the reviewing court determines as a matter of law that the challenged report is a fair abridgment." Alpine, 114 Wash. App. at 386, 57 P.3d 1178. We address each of the false statements alleged by McNamara in her complaint.
¶ 19 McNamara's complaint alleged that the statement "Interpol Warrant Issued" on the SKW webpage was false. While it is not precisely accurate that an "Interpol warrant" was issued, the statement on the website is a fair abridgment of the allegations in the complaint that "[s]ince Defendant's return to Washington, Belize authorities have issued a warrant for Defendant's arrest on the charge of murdering Mr. McNamara, Attachment 4 is Interpol's posting regarding Defendant's warrant for murder."[8]
¶ 20 McNamara's complaint next alleged that the statement "Ms. McNamara has been found guilty of Incest" on SKW's website is false. This allegation fails because the SKW webpages in the record do not state that McNamara was found guilty of incest. The only statement concerning incest is the sentence beneath McNamara' photo "Murder & incest with ties to WA State: Defendant Tracy Nassl a.k.a. McNamara is a Grant County resident with a warrant out for her arrest/prosecution." In her briefing, McNamara asserts that SKW lied by claiming that McNamara was wanted not only for murder but for incest. While it was not surgically precise to state that McNamara was wanted for incest, the statement is a fair abridgment of the allegation in the complaint that "[McNamara], a waitress and the natural daughter of Mr. McNamara's brother, began spending time with Mr. McNamara. The two ultimately entered into a romantic relationship."[9]
¶ 21 McNamara's complaint next alleged that the statement "Ms. McNamara has been found guilty of Murder" on SKW's webpage is false. Again, this allegation fails because the SKW webpages in the record do not state that McNamara was found guilty of murder. The webpages state only that McNamara was wanted for arrest and prosecution for murder. In her briefing, McNamara asserts *13 that SKW lied by claiming McNamara was wanted for murder. This statement is an accurate or fair abridgment of the complaint. The complaint alleges that Belize officials had issued a warrant for McNamara's arrest for murder and includes a copy of the Interpol notice that identifies the charge as murder.
¶ 22 McNamara's complaint next alleged that the statement on SKW's website that it had obtained at least a $10 million settlement against McNamara was false. Once again, the SKW webpages in the record do not make this statement. McNamara's brief alleges that SKW's inclusion of its wrongful death action against her within the webpage identifying "successful verdicts and settlements" was false. We disagree. While the SKW webpage does contain a statement that cases identified are a sample of SKW's successes, the featured and first case highlighted was the "Ride the Ducks" case which, as is clear from the site, far from settled and there is no mention of a verdict or settlement. This is true for at least one of case in addition to case involving McNamara. The description of the wrongful death proceedings is a fair and accurate account of the complaint.
¶ 23 Finally, while not identified in the complaint, McNamara's brief challenges SKW's statement on its webpage that the motive for murder was her desire to acquire her uncle's property. These properties, she claims, were transferred to her in 2012, years before his death. The statement on SKW's website is substantially accurate and fair abridgment of the complaint. The complaint stated that (1) McNamara's motive for murder was the "acquisition of [Timothy McNamara's] financial assets"; (2) she "enticed [Timothy McNamara] into gifting three properties to her by quitclaim deed, including the family farm"; (3) she "enticed [Timothy McNamara] to pay for her debts and expenses related to her ownership interest in a piece of property located in [North Carolina]"; and (4) she "enticed [Timothy McNamara] to purchase real property in Belize to operate a bed and breakfast."
¶ 24 In summary, we agree with the trial court that the statements made on SKW's website are accurate or a fair abridgment of the wrongful death complaint filed against McNamara. Consequently the statements on SKW's website are protected by the fair report privilege. Summary judgment and dismissal of McNamara's defamation claims was appropriate.
Consumer Protection Act
¶ 25 Under the CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful." RCW 19.86.020. To establish a CPA claim, McNamara was required to show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, and (4) and causes injury to the plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). Certain "entrepreneurial aspects of the practice of law may fall within the 'trade or commerce' definition of the CPA," such as "the way a law firm obtains, retains, and dismisses clients." Short v. Demopolis, 103 Wash.2d 52, 60-61, 691 P.2d 163 (1984). McNamara's complaint does not identify the unfair or deceptive acts or practices of SKW's business result in the violation of the CPA. In her opposition to SKW's motion to dismiss, however, McNamara asserts that SKW's false and deceptive website advertising violates the CPA. As discussed above, the statements on SKW's website are an accurate and a fair abridgment of plaintiff's complaint and protected by the fair report privilege. Consequently, McNamara cannot demonstrate that the statements constitute an unfair or deceptive act. Because McNamara failed to demonstrate SKW's unfair or deceptive acts, her claim under the CPA fails and dismissal was appropriate.
¶ 26 Affirmed.
WE CONCUR:
Leach, J.
Schindler, J.

SKW argued below that the statements contained on its website are privileged under both the litigation privilege and the fair report privilege. Because the fair report privilege is dispositive, we do not address the litigation privilege.

McNamara argues that under comment C to Restatement (Second) of Torts § 611, a party may not rely on the fair report privilege by making the original defamatory publication himself and then reporting what was stated in the original publication. Consequently, McNamara contends, because SKW prepared the underlying complaint in the wrongful death action SKW cannot invoke the fair report privilege to protect republication of information in the complaint on its website. We disagree. While Washington courts have followed Restatement (Second) of Torts § 611, we have not adopted the self-reporting exception in comment C. We decline to do so here.

Attachment 4 to the wrongful death complaint is a copy of an Interpol notice containing the same photo of McNamara used on SKW's webpage and identifying that Tracy Shannon Nessl is "wanted by the judicial authorities of Belize for prosecution/to serve a sentence" on the charge of murder.

"Incest" means "[s]exual relations between family members or close relatives" and "[i]ntermarriage between persons related in any degree of consanguinity or affinity within which marriage is prohibited-for example, through the uncle-niece or aunt-nephew relationship." Incest, Black's Law Dictionary 879 (10th ed. 2014). See also RCW 9A.64.020(2)(a) ("A person is guilty of incest ... if he or she engages in sexual contact with a person whom he or she knows to be related to him or her, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.").